**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 19-7098**

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**MARY E. CHAMBERS**

**Plaintiff-Appellant,**

**v.**

**DISTRICT OF COLUMBIA**

**Defendant-Appellee.**

_____

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA,
No. 1:14-cv-02032-RBW (Walton, J.)

_____

**APPELLANT'S BRIEF**

_____

David A. Branch, Esq.
Law Office of David A. Branch and Associates, PLLC
1828 L Street, N.W., Suite 820
Washington, D.C. 20036
202-785-2805 (phone)
202-785-0289 (facsimile)
davidbranch@dbranchlaw.com

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), Plaintiff-Appellant makes the following certificate of counsel:

**(A) Parties and Amici.** Plaintiff-Appellant Mary Chambers and Defendant-Appellee District of Columbia are the only parties who appeared before the district court. Both parties are appearing in this Court related to this matter. In addition, Plaintiff-Appellant Chambers believes that the United States Department of Justice may file an amicus brief in support of Plaintiff-Appellant Chambers.

**(B) Rulings Under Review.** On July 24, 2019, District Court Judge Reggie B. Walton granted Defendant-Appellee District of Columbia's Motion for Summary Judgment. JA; *Chambers v. District of Columbia*, 389 F. Supp. 3d 77 (D.D.C. 2019).

**(C) Related Cases.** This case is on appeal to this Court from a decision of the U.S. District Court for the District of Columbia. To Plaintiff-Appellant Chambers' knowledge, this is the only related case.

*/s/ David A. Branch*
David A. Branch
D.C. Bar No. 438764
Law Offices of David A. Branch &
Associates, PLLC
1828 L Street, N.W., Suite 820
Washington, D.C. 20036
(202) 785-2805

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF CONTENTS............................................................................ ii

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY DEFINING ABBREVIATIONS AND ACRONYMS.......................v

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES............................................................2

STATEMENT OF THE CASE................................................................3

SUMMARY OF THE ARGUMENT ......................................................8

   I.   Standard of Review ......................................................................10

   II.  Case precedents incorrectly held that pure lateral transfers are not adverse actions without additional proof of harm...........................................11

   III.   The District Court erred in holding there is no evidence of a retaliatory adverse action.......................................................................................15

   IV.   Alternatively, the District Court erred in holding there is no evidence of harm as a result of its refusal to transfer Appellant Chambers............................16

CONCLUSION .....................................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS FOR APPELLANT'S OPENING BRIEF ....................................................19

CERTIFICATE OF SERVICE .............................................................20

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Johnson*, 795 F.3d 34 (D.C. Cir. 2015) .......................................................15

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ....................................................10

*Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999)............................................. 8, 11, 12

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) ............... 8, 9, 12, 13, 17

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ........... 8, 13, 14, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................11

*Chambers v. District of Columbia*, 389 F. Supp. 3d 77 (D.D.C. 2019) ............... i, 1

*Chappell-Johnson v. Powell*, 440 F.3d 484 (D.C. Cir. 2006)..................................10

*Faragher v. Boca Raton*, 524 U.S. 775 (1998)........................................................13

*Forkkio v. Powell*, 306 F.3d 1127 (D.C. Cir. 2002). .................................... 9, 11, 16

*Gasser v. Ramsey*, 125 F. Supp. 2d 1 (D.C. Cir. 2000) ...........................................12

*Greenberg v. Food & Drug Admin.*, 803 F.2d 1213 (D.C. Cir. 1986) ....................11

*Jackson v. Finnegan*, 101 F.3d 145 (D.C. Cir. 1996)..............................................11

*Marshall v. Federal Exp. Corp.*, 130 F.3d 1095 (D.C. Cir. 1997) .........................13

*Mitchell v. District of Columbia*, 304 F. Supp. 3d 110 (D.D.C. 2018) ..................15

*Ortiz-Diaz v. Dep't of Hous. & Urban Dev.*, 831 F. 3d 488 (D.C. Cir. 2018) ........12

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) .......................... 9, 13, 17

*Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007)......................14

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ........................10

*Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984)......................................................13

*Strothers v. City of Laurel, Maryland*, 895 F.3d 317 (4th Cir. 2018) ....................15

iii

*Taylor v. Solis,* 571 F.3d 1313 (D.C. Cir. 2009) ..................................................... 15

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) .................................. 11

*Van Meter v. Barr*, 803 F. Supp. 444 (D.D.C. 1992) ............................................... 13

**Statutes**

28 U.S.C. § 1291 ........................................................................................................ 1

42 U.S.C. § 2000e-16(a) .......................................................................................... 14

42 U.S.C. § 2000e-2(a)(1) ................................................................................. 11, 14

5 U.S.C. § 2302(a)(2)(A)(iv) ................................................................................... 14

**Other Authorities**

EEOC Enforcement Guidance on National Origin Discrimination, EEOC No. 915.005 (November 18, 2016) ............................................................................ 14

Opposition to Writ of Certiorari, *Forgus v. Shanahan*, (No. 18-942) ......... 8, 12, 14

*Peterson v. Linear Controls, Inc.*, No. 18-1401 ..................................................... 12

## <u>GLOSSARY DEFINING ABBREVIATIONS AND ACRONYMS</u>

| | |
|---|---|
| District Court | District Court for the District of Columbia |
| DOJ | United States Department of Justice |
| EEOC | Equal Employment Opportunity Commission |
| Section 1981 | Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 |
| This Circuit | United States Court of Appeals for the District of Columbia Circuit |
| Title VII | Title VII of the Civil Rights Act of 1964 |

## <u>STATEMENT OF JURISDICTION</u>

Plaintiff-Appellant Mary Chambers ("Appellant Chambers") timely filed her Notice of Appeal on August 22, 2019 from the July 24, 2019 Order Granting Defendant's Motion for Summary Judgment of the United States District Court for the District of Columbia (the "District Court"), which disposed of all claims. JA275-296; *Chambers v. District of Columbia*, 389 F. Supp. 3d 77 (D.D.C. 2019). The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and the United States Court of Appeals for the District of Columbia Circuit ("this Circuit") has jurisdiction pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether case precedents holding pure lateral transfers and denial of such transfers do not constitute discriminatory adverse actions without proof of harm are correct.

II.      Whether the district court erred in holding that Appellant Chambers did not suffer a retaliatory adverse action when Appellee District of Columbia ("the District") knew since 2008 that Appellant Chambers values a transfer and denied her transfer requests after she filed an EEOC complaint in October 2010.

III.      Whether the district court erred in holding that Appellant Chambers did not suffer a discriminatory adverse action when the District denied her transfers given to other male employees that would have given her the opportunity to receive awards and career advancement opportunities and kept her in a hostile and unbearable work environment.

## **STATEMENT OF THE CASE**

In October 1989, the Child Support Services Division of the District of Columbia Office of the Attorney General (the "Agency") hired Appellant Chambers as a clerk, and she became a Support Enforcement Specialist in 2000. JA30, 101. Appellant Chambers did not have a single disciplinary action in her personnel record for the two decades she worked for the Agency prior to the year she filed her EEOC complaint. JA89. From 2000 to 2011, Appellant Chambers was forced to manage a larger caseload than her coworkers at the Agency. JA181-82. In addition, Appellant Chambers assisted with Angela Williams' caseload when she was sick. JA184. Appellant Chambers was also charged with training several junior employees. JA171. Despite assuming a larger proportion of the duties and responsibilities of a Support Enforcement Specialist, the Agency denied Appellant Chambers incentive and special awards granted to her male coworkers. JA173-174. For example, Saadiq Abdul-Hagg, a male Support Enforcement Specialist, only had to work in the file room but received multiple awards. JA49-50, 138.

In addition, Appellant Chambers was held to a higher standard of conduct than her male coworkers. JA35-36, 53, 56-57, 87-99, 137-140. The Agency attempted to suspend her for four days when she leaned or sat on a trash can during her lunch break on April 6, 2010 and purportedly arguing with an Agency visitor. JA87-99. When Appellant Chambers filed a grievance regarding the four-day

3

suspension the arbitrator expressed skepticism that "using a hallway trash can as a temporary seat is tantamount to the unauthorized use of government property" and highlighted the unreasonableness of the accusation:

> [I]f merely leaning against a trash can in an elevator hallway were to be considered as unauthorized use of that property, I suspect that many off-duty employees and visitors to the CSSD office would be guilty of violating the prohibition.

JA218.

The arbitrator also found that a witness the Agency presented – Olivia Jones, the Agency employee who wrote an incident report – was not a "reliable witness" as her testimony during the hearing conflicted with other witnesses. JA211, 215, 219. Further, the arbitrator found another piece of testimony the Agency relied upon to be of an "incredible nature" which did not "encourage reliance...." JA 220. The arbitrator overturned the four day suspension. *Id*.

In contrast, the Agency just wrote up Fernando Myrie, a male Support Enforcement Specialist, for being rude and disrespectful on a daily basis without suspending him. JA35-36. The Agency did not suspend male employees, like Robert Ratchford or Dennis Howard, who used a government vehicle to move people on the weekend or take people out to lunch without authorization. JA53, 56-57.

From 2008 onward, Appellant Chambers attempted to remove herself from the work environment and made over twenty requests to transfer to the Intake Unit,

4

all of which were denied. JA167. Benidia Rice, a supervisor within Appellant Chambers' chain of supervision, told Appellant Chambers she could not transfer to the Intake Unit because of Patricia Williams, the supervisor of the Intake Unit. JA153. However, Appellant Chambers previously spoke to Ms. Williams who welcomed her to the Intake Unit. JA173.

In August 2010, Appellant Chambers filed an EEOC charge of discrimination. JA101.

On September 1, 2010, Appellant Chambers requested another transfer to the Intake Unit. JA75, 103. At the same time, Juana Wright-Massie, a female Support Enforcement Specialist, wanted to transfer to the enforcement unit to take Appellant Chambers' place. *Id.* However, the Agency denied both of their transfers even though they knew Ms. Wright-Massie wanted to replace Appellant Chambers so Appellant Chambers' unit would not be short staffed. JA103, 104, 171.

On or around January 18, 2011, Appellant Chambers learned that the Agency transferred Mr. Myrie, a male Support Enforcement Specialist, to the Intake unit even though Appellant Chambers had been making the transfer request for years and just made another request on September 1, 2010. JA57, 101, 137. Mr. Myrie was again transferred in 2010 to the System and Automation Section with a promise of promotion to the GS-12 level. JA137. Mr. Myrie had performance issues and was disrespectful towards visitors on a daily basis but was promised a

promotion with his transfer while the Agency denied Appellant Chambers' transfer requests and the transfer of another female Support Enforcement Specialist. JA103, 104, 137, 171, 178.

In addition to Mr. Myrie, Appellant Chambers is aware of at least ten male employees who were transferred within the Agency. JA177. For example, James Sager, a Support Enforcement Specialist, was detailed away from the Agency for a period of five years. JA140, 171. While the Agency transferred these male employees, it denied over twenty requests to transfer from her. *Id.*

After Appellant Chambers filed her EEOC complaints, her treatment at the Agency further deteriorated and the Agency delayed her medical leave payment and pay check processing and refused to perform a desk audit. JA166-185. Appellant Chambers sought counseling from COPE and her physician and her medical provider remove her from the work environment. JA150, 175. Appellant Chambers had to take an extended medical leave from November 15 to December 5, 2011. JA150. She was again on leave due from November 2014 to May 2016. JA31.

Approximately eight years after Appellant Chambers' first transfer request, on May 4, 2016, the Agency transferred Appellant Chambers from the Enforcement Unit. JA134. However, instead of transferring her to the consistently

requested Intake Unit, the Agency transferred her to the Locate Unit and changed her position from that of a Support Enforcement Specialist to an Investigator. *Id*.

Procedural History

Appellant Chambers filed a civil complaint on November 20, 2014. JA277. The District filed and the District Court granted a motion to dismiss Appellant Chambers' retaliation claim without prejudice, and Appellant Chambers filed a Second Amended Complaint on June 23, 2017, alleging gender discrimination and retaliation claims. JA277.

The District later filed a motion for summary judgment on all claims, and on July 24, 2019, the District Court issued a memorandum opinion granting the motion. JA275-95. The District Court held that Appellant Chambers only exhausted her denial of transfer claims. JA287-88. It held pure lateral transfers are not adverse actions. JA293-294. It also held that "the record is completely devoid of evidence from which a reasonable juror could conclude that [Appellant Chambers] suffered any harm, let alone any material adverse consequences…." JA294.

## SUMMARY OF THE ARGUMENT

The District Court erred in holding that pure lateral transfers and denial of such transfers do not constitute adverse action without additional harm even though it is the current Circuit precedent. *Compare Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64-65 (2006) *with Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)). In 2019, the United States Department of Justice ("DOJ") denounced this "misguided" interpretation of binding Supreme Court precedent because this Circuit applied the standard for hostile work environment to the adverse action standard. Opposition to Writ of Certiorari, *Forgus v. Shanahan*, (No. 18-942) [hereinafter DOJ Brief] at 10-14. The DOJ asserted that transfers categorically qualify as adverse actions under the plain meaning of Title VII. *Id.*

Appellant Chambers had shown sufficient record evidence of retaliatory adverse actions. When an employer takes action to deprive an employee of something it knew the employee values, the deprivation constitutes an adverse action. *See White*, 548 U.S. at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children."). When the Agency denied Appellant Chambers' transfer after her EEOC complaint, knowing the importance of the transfer to Appellant Chambers it engaged in a retaliatory adverse action. JA167.

8

Alternatively, Appellant Chambers has shown sufficient record evidence of a discriminatory transfer under the current precedent because the denial of transfer resulted in lost awards and career advancement opportunities. *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). Appellant Chambers performed a heavier workload than male counterparts for over a decade without receiving the same incentive and special awards as her coworkers, JA49-50, 138, 173-74, 181-84, and transfer to another unit came with the promise of promotion to the GS-12 level for a male Support Enforcement Specialist. JA137. However, Appellant Chambers was never given this opportunity.

In addition, if *Ellerth* indeed sets the standard for material changes in employment terms and conditions in discrimination cases, then cases applying the *Ellerth* material change standard in other contexts are also applicable to the adverse action standard. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 150 (2004). The *Suders* court held that "transfer to a position in which [an employee] would face unbearable working condition" constitute an adverse action that changes the employment status for the purpose of constructive discharges. *Id.* at 134. In the case at bar, the Agency kept Appellant Chambers in a position with unbearable working conditions that eventually forced her on extended medical leave, which constitutes a materially adverse action under the *Suders* standard.

9

# ARGUMENT

## I.     Standard of Review

The United States Court of Appeals for the District of Columbia Circuit reviews summary judgment *de novo*. *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006).

The Federal Rule of Civil Procedure 56(c) provides that a district court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is a genuine issue as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If factual issues can "reasonably be resolved in favor of either party," there is a need for a trial. *Id.* at 250. The court "should review all of the evidence in the record," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), viewing the evidence in the light most favorable to the non-moving party and according that party the benefit of all reasonable inferences. *Anderson*, 477 U.S. at 255.

At this stage of the proceedings, the court is not to make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150. If the evidence presented on a dispositive issue is subject to conflicting interpretations or

10

reasonable persons might differ as to its significance, summary judgment is improper. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). Only if, after examining the evidence, the court finds that a party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," is summary judgment appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jackson v. Finnegan*, 101 F.3d 145, 150 (D.C. Cir. 1996). Because summary judgment is a "drastic remedy," it "will only be granted in clear cases." *Greenberg v. Food & Drug Admin.*, 803 F.2d 1213, 1216 (D.C. Cir. 1986) (citation omitted).

## II.  Case precedents incorrectly held that pure lateral transfers are not adverse actions without additional proof of harm.

Pursuant to 42 U.S.C. § 2000e-2(a)(1):

It shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin….

To show a *prima facie* case of discrimination under Title VII, an employee must establish: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). The sole legal question at issue in the case at bar is what constitutes an adverse action under Title VII.

11

Pure lateral transfers and denial of such transfers do not constitute cognizable adverse actions without additional circumstances showing harm based on the current precedent of this Circuit. *Brody*, 199 F.3d at 457; *Ortiz-Diaz v. Dep't of Hous. & Urban Dev.*, 831 F. 3d 488, 494 (D.C. Cir. 2018) (Kavanaugh, J., concurring) (acknowledging the precedent but expressing "skepticism about those cases"). In 2019, the DOJ indicated that this holding is an incorrect and a "misguided" interpretation of statute the binding Supreme Court precedent, signaling that it no longer plans to defend this holding. DOJ Brief at 10-14.[1]

The DOJ traced multiple circuit courts' improper use of "significant-detrimental-effect standard" to adverse actions – including pure lateral transfers and the denial of such transfers – to the Supreme Court decision in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). DOJ Brief at 14-15. The seminal decision in this Circuit that held pure lateral transfers are not material adverse actions – *Brody* – also relied on *Ellerth*. *Gasser v. Ramsey*, 125 F. Supp. 2d 1, 5-6 (D.C. Cir. 2000) (citing *Brown v. Brody*, 199 F.3d 446, 456-57 (D.C. Cir. 1999) (citing *Ellerth*, 524 U.S. at 742)). Prior to *Ellerth,* courts in the District of

---

[1] There are two Petitions for Writ of Certiorari before the United States Supreme Court ("Supreme Court") that address whether pure lateral transfers constitute adverse actions: *Peterson v. Linear Controls, Inc.*, No. 18-1401 and *Forgus v. Shanahan*, No. 18-942. The DOJ stated the position of the federal government that pure lateral transfers are adverse actions in *Forgus v. Shanahan*, No. 18-942, and the Supreme Court has asked the federal government to file a brief stating the government's position in *Peterson v. Linear Controls, Inc.*, No. 18-1401.

Columbia seem to accept without analysis transfers as adverse actions. *See e.g., Marshall v. Federal Exp. Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997) (implying transfers are adverse actions in an ADA context); *Segar v. Smith*, 738 F.2d 1249, 1259 (D.C. Cir. 1984) (implying transfers are adverse actions in a retaliation context); *Van Meter v. Barr*, 803 F. Supp. 444 (D.D.C. 1992) (discussing EEOC's analysis of a discriminatory transfer).

The DOJ noted that the *Ellerth* decision only established the standard for vicarious liability in hostile work environment contexts, and the Supreme Court subsequently denounced in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64-65 (2006) the application of the *Ellerth* standard to non-hostile work environment claims and those that do not involve vicarious liability, stating in its entirety in the relevant portion:

> *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), as petitioner notes, speaks of a Title VII requirement that violations involve "tangible employment action" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*., at 761. But *Ellerth* does so **only to "identify a class of [hostile work environment**] cases" in which an employer should be held vicariously liable (without an affirmative defense) for the acts of supervisors. *Id*., at 760; see also *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004) (explaining holdings in *Ellerth* and *Faragher v. Boca Raton*, 524 U.S. 775 (1998), as dividing hostile work environment claims into two categories, one in which the employer is strictly liable because a tangible employment action is taken and one in which the employer can make an affirmative defense). ***Ellerth* did not discuss the scope of the general anti-discrimination provision**. *See* 524 U.S. at 761 (using "concept of a

13

> tangible employment action [that] appears in numerous cases in the
> Courts of Appeals" **only "for resolution of the vicarious liability**
> **issue**"). And *Ellerth* did not mention Title VII's anti-retaliation
> provision at all. At most, *Ellerth* sets forth a standard that petitioner
> and the Solicitor General believe the anti-retaliation provision ought
> to contain. But it does not compel acceptance of their view.

*White*, 548 U.S. at 64-65 (emphasis added). The DOJ noted the "significant and

widespread misreading of Title VII" on this issue. DOJ Brief at 16.

The DOJ reasoned that "[u]nder the ordinary meaning of the statutory

language, formally transferring an employee from one job to another involves the

'terms' or 'conditions' of employment." DOJ Brief at 13 (citing 42 U.S.C. §

2000e-2(a)(1)). The EEOC also lists transfers as employment decisions under the

purview of Title VII. *See* EEOC Enforcement Guidance on National Origin

Discrimination, EEOC No. 915.005, § 3 (November 18, 2016).

Under the consistent-usage canon of statutory construction, what constitute

employer actions against public and private sector employees should be consistent.

*See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007); 42

U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e-16(a); 5 U.S.C. § 2302(a)(2)(A)(iv).

Indeed, the circuit courts consistently applied the standard delineated in 42 U.S.C.

§ 2000e-2 to both federal and public sector employees, showing that the adverse

action standards are similar if not identical for the two groups. DOJ Brief at 11-12

(compiling circuit court cases, including this Circuit, applying the public sector

standard to federal employees). While 42 U.S.C. § 2000e-16(a) does not delineate

whether transfers constitute covered personnel actions, an analogous statute, the Civil Service Reform Act of 1978, explicitly includes transfers as a personnel action. *Compare* 42 U.S.C. § 2000e-16(a) *with* 5 U.S.C. § 2302(a)(2)(A)(iv). The DOJ promoted a consistent application of adverse action that includes **_all_** lateral transfers. *Compare* 42 U.S.C. § 2000e-2(a)(1) *with* 42 U.S.C. § 2000e-16(a); 5 U.S.C. § 2302(a)(2)(A)(iv); *see also* DOJ Brief at 10-11. Pure lateral transfers indeed constitute adverse action under the statutory language of Title VII. *See id.*

## III. The District Court erred in holding there is no evidence of a retaliatory adverse action.

Employer actions that "could dissuade[] a reasonable worker from making or supporting a charge of discrimination" is a retaliatory hostile work environment. *White*, 548 U.S. at 67. "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id.* at 69. In essence, when an employer acts to deprive an employee of something it knew she values it constitutes an adverse action. *See id.*; *see also Strothers v. City of Laurel, Maryland*, 895 F.3d 317 (4th Cir. 2018) (holding that an employer cannot deprive an employee of a bargained-for term out of spite); *Mitchell v. District of Columbia*, 304 F. Supp. 3d 110, 119 (D.D.C. 2018) (holding that publicly humiliating an employee by barring her from a training can constitute an adverse action); *Allen v. Johnson*, 795 F.3d 34, 47 n. 5 (D.C. Cir. 2015) (quoting *Taylor v. Solis,* 571 F.3d 1313, 1332 (D.C. Cir. 2009)

15

(Rogers, J., dissenting) ("[R]etaliation can involve a thousand cuts….Where one of those cuts was a materially adverse action, it blinks reality to suggest the other 999 shed no light on whether that cut was intentional and retaliatory." (internal citation and quotation marks omitted)).

In the case at bar, the District clearly knew Appellant Chambers valued transferring to the Intake Unit because she requested the transfer over twenty times over multiple years. JA176. When the District denied Appellant Chambers' request to transfer to the intake unit even when Ms. Wright-Massie would provide coverage for her position and there was sufficient work in the Intake Unit to accommodate Mr. Myrie, the District took an adverse action against Appellant Chambers. JA75, 103, 104, 171. The District then continuously denied Appellant Chambers' request to transfer to the Intake Unit even though Ms. Williams, the supervisor for the Intake Unit, welcomed her. JA75, 103, 104, 171, 173, 176.

## IV. Alternatively, the District Court erred in holding there is no evidence of harm as a result of its refusal to transfer Appellant Chambers.

Under current precedent, if Appellant is harmed by the transfer denial, such as loss of awards and career advancement opportunities, it constitutes a discriminatory adverse action. *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). The District denied Appellant Chambers the same awards and advancement opportunity offered to Mr. Myrie. JA137.

16

In addition, the *Suders* court held that "transfer to a position in which [an employee] would face unbearable working condition" constitute an adverse action that changes the employment status for the purpose of constructive discharges. *Id.* at 134. The *Suders* court followed *Ellerth* when determining whether the employment status changed. *Id.*

In the case at bar, Appellant Chambers was forced to manage a disproportionate amount of cases while training junior employees without receiving the same awards as her male counterparts. JA49-50, 138, 173-74. The Agency attempted to suspend her for four days for misuse of government when she leaned against a trash can on break while it did not punish two male employees who made personal use out of a government vehicle. *Compare* JA218 *with* JA 53, 56-57. The Agency attempted to suspend her for purportedly arguing with a visitor once when the Agency did not suspend Mr. Myrie for daily rude and unprofessional behavior, instead opting to fit a "proper fit" for him in another unit and then promise him a promotion with another transfer. JA35-36, 137. Appellant repeated observed her and her female coworkers transfers denied while observing at least eleven male employees transferred. JA75, 103, 167, 171. Appellant Chambers' leave and payment processing were also delayed. JA166-185. The Agency kept her in an unbearable work condition to the point when she physically could not bear it and had to take extended medical leave. JA150, 175. There is

evidence of the detrimental effect of the Agency's denial of Appellant Chambers'

transfer.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant Chambers respectfully asks this Court

to reverse the decision below and to remand this case to the court below.


Date:        March 6, 2020                Respectfully submitted,

                                          */s/ David A. Branch*
                                          David A. Branch
                                          D.C. Bar No. 438764
                                          Law Offices of David A. Branch &
                                          Associates, PLLC
                                          1828 L Street, N.W., Suite 820
                                          Washington, D.C. 20036
                                          (202) 785-2805

18

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS FOR APPELLANT'S OPENING BRIEF

Comes now, Appellant Mary Chambers, by and through counsel, and hereby files this Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements for Appellant's Opening Brief, and in support thereof states as follows.

1. Appellant's Brief complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 3,871 words.

2. Appellant's Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because: the document has been prepared in a proportionally spaced typeface using 2007 Microsoft Word in plain 14-point Times New Roman font style.

Respectfully submitted,

_____/s/ David A. Branch_____
David A. Branch
Law Offices of David A. Branch &
Associates, PLLC
1828 L Street, NW, Suite 820
Washington, D.C. 20036
(202) 785-2805
davidbranch@dbranchlaw.com

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of March, 2020 a copy of the foregoing

was served on counsel for Appellee below through Pacer.

Holly M. Johnson
Senior Assistant Attorney General
Office of the Solicitor General
District of Columbia Office of the Attorney General
441 4th Street, N.W.
Suite 630 South
Washington, DC 20001
Phone: (202) 442-9890
Fax: (202) 715-7713
holly.johnson@dc.gov
*Counsel for Appellee*

*/s/ David A. Branch*
David A. Branch

20