# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 20, 2020     Decided February 19, 2021

No. 19-7098

MARY E. CHAMBERS,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-02032)

*David A. Branch* argued the cause and filed the briefs for appellant. *Johnnie L. Johnson III* entered an appearance.

*Eric S. Dreiband*, Assistant Attorney General, U.S. Department of Justice, *Tovah Calderon* and *Anna M. Baldwin*, Attorneys, *Jennifer S. Goldstein*, Associate General Counsel, Equal Employment Opportunity Commission, and *Sydney A.R. Foster*, Assistant General Counsel, were on the brief for *amicus curiae* United States of America in support of appellant.

*Megan Browder*, Attorney, Office of the Attorney General for the District of Columbia, argued the cause for appellee. On

2

the brief were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Holly M. Johnson*, Senior Assistant Attorney General.

Before: TATEL and GARLAND*, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* TATEL and *Senior Circuit Judge* GINSBURG.

PER CURIAM: Over the years, the District of Columbia's Office of the Attorney General (OAG) denied Mary Chambers's multiple requests for a lateral transfer to a different unit within OAG. Chambers alleges that under Title VII of the Civil Rights Act of 1964, those lateral transfer denials constituted unlawful sex discrimination and unlawful retaliation for filing discrimination charges with the Equal Employment Opportunity Commission (EEOC). The district court, relying on circuit precedent, granted summary judgment to the District because Chambers failed to show materially adverse consequences arising from the denials of her purely lateral transfer requests. For the reasons set forth below, we affirm.

**I.**

In 2000, Chambers became a Support Enforcement Specialist within OAG's Child Support Division. Although

---

* Judge Garland was a member of the panel at the time this case was argued but did not participate in the final disposition of the case.

3

initially assigned to the Interstate Unit, Chambers later sought transfers to the Intake Unit, also within OAG's Child Support Division. Those requests were denied. Chambers filed a charge of discrimination with the EEOC in August 2010 based on those denials.

In September 2010, Chambers sent an e-mail to her supervisors, asking them to reconsider her transfer request. They denied her request the next day, explaining that transferring her did "not fit into management's immediate plans." Joint Appendix (J.A.) 75. Chambers filed another charge of discrimination with the EEOC in March 2011, alleging that the transfer denial constituted sex discrimination and retaliation under Title VII. Charge of Discrimination, J.A. 101.

In September 2011, Chambers again asked her supervisors for a transfer. J.A. 103. This time, Chambers offered to switch positions with an employee in the Intake Unit. *Id.* Hours later, Chambers's Division Director denied this request too. *Id.*

In 2014, Chambers sued the District of Columbia, alleging gender discrimination under Title VII. Following discovery, the district court granted summary judgment to the District. *Chambers v. District of Columbia*, 389 F. Supp. 3d 77 (D.D.C. 2019). The court found that her discrimination and retaliation claims arising from the denial of lateral transfers were not actionable under circuit law because she "failed to show that a genuine issue of material fact exist[ed] as to whether she suffered an adverse action." *Id.* at 93. This appeal followed and is limited to the discrimination and retaliation claims associated with the lateral transfer denials.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see*

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute about a material fact is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. We review the district court's grant of summary judgment de novo. *Minter v. District of Columbia*, 809 F.3d 66, 68 (D.C. Cir. 2015).

## II.

Title VII makes it unlawful for private-sector employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also requires that "[a]ll personnel actions affecting employees . . . in those units of the Government of the District of Columbia having positions in the competitive service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Although these provisions differ, our court has held that "the two contain identical prohibitions." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

Title VII also includes an antiretaliation provision that makes it unlawful for a private-sector employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Although Title VII contains no antiretaliation provision for federal government or District of Columbia employers, the Supreme Court has "assume[d] without deciding that it is unlawful for a federal agency to retaliate

5

against a civil servant for complaining of discrimination." *Green v. Brennan*, 136 S. Ct. 1769, 1774 n.1 (2016).

Discrimination and retaliation claims supported by circumstantial evidence are evaluated under the burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). "A plaintiff must first establish her prima facie case." *Id.* To do so, the plaintiff must "allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Id.* Once the plaintiff clears that hurdle, the "burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Id.* at 1092. And if the defendant satisfies that burden, the plaintiff, to defeat summary judgment, must produce "sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Id.* (internal quotation marks omitted).

The threshold question in this case is whether Chambers established that she suffered an adverse employment action. As the district court correctly noted, generally "[t]he standard for what constitutes an adverse action differs under Title VII's anti-discrimination and anti-retaliation provisions." *Chambers*, 389 F. Supp. 3d at 92. The district court also correctly described our circuit precedent regarding whether a lateral transfer—or denial thereof—without diminution in pay or benefits qualifies as an adverse action, which applies the same standard under Title VII's antidiscrimination and antiretaliation provisions. *Id.* at 93. Specifically, in *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), our court held that for

6

cases involving purely lateral transfers, "a plaintiff . . . does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Id*. at 457.

Chambers urges us to revisit *Brown*'s interpretation of Title VII's antidiscrimination provision because, she argues, it is incompatible with the plain text of that provision and inconsistent with a later Supreme Court decision, *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64–65 (2006). Of course, "[o]ne three-judge panel does not have the authority to overrule another three-judge panel of the court." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996). We shall therefore evaluate Chambers's discrimination and retaliation claims under the same standard the district court applied, and we reach the same conclusion: no reasonable jury could conclude that Chambers suffered materially adverse consequences associated with the denial of her lateral transfer requests for purposes of her discrimination or retaliation claim.

**Discrimination Claim**

Chambers makes two arguments for why her transfer denial qualifies as an adverse action under Title VII's antidiscrimination provision. Neither has merit.

First, she argues that the denial "resulted in lost awards and career advancement opportunities" because a male colleague who was transferred to her desired unit subsequently received a promotion and incentive awards. Appellant's Br. 9. But her only evidence to support this argument is a timeline of that male colleague's career progression, which states that the colleague won awards after he was transferred *out* of the Intake

7

Unit. J.A. 137. Based on this evidence alone, no reasonable jury could find that the District's refusal to transfer her resulted in lost awards or career opportunities. *See Burley v. National Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (noting "all of the relevant aspects of [a plaintiff's] employment situation [must have been] nearly identical to those of the [comparator]" (internal quotation marks omitted)).

Second, Chambers argues that the denial forced her to remain in an "unbearable working condition." Appellant's Br. 17. In support, she claims she was "forced to manage a disproportionate amount of cases." *Id.* But Chambers demonstrates no personal knowledge about the caseloads carried by her coworkers in her unit, and the record is silent on the caseload in her desired unit. *See* Fed. R. Civ. P. 56(c)(4) (requiring personal knowledge for affidavits used to support summary judgment). Chambers also argues that she ultimately had to take an extended medical leave because her working conditions were unbearable. But no record evidence supports her claim that something about her working environment required leave. Rather, the only record evidence regarding the reason for her leave is her deposition statement that she had a stroke right before she took leave. J.A. 31. Lastly, Chambers argues that her leave and payment processing was delayed, but she put forth no evidence showing that her unit placement caused or contributed to those delays in processing paperwork.

We therefore agree with the district court that Chambers failed to raise a genuine issue of material fact as to whether the District's denial of her transfer request qualified as an adverse action under Title VII's antidiscrimination provision.

**Retaliation Claim**

Chambers offers only one argument for why her transfer denial qualifies as an adverse action that would violate Title

8

VII's antiretaliation provision. Specifically, she argues that "when an employer acts to deprive an employee of something it knew she values[,] it constitutes an adverse action." Appellant's Br. 15. And, according to Chambers, because the District knew of her desire to transfer, the transfer denial was materially adverse.

Chambers correctly cites *White* for the proposition that an employee's particular circumstances may affect whether a retaliatory act resulted in materially adverse consequences. As the Court explained, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *White*, 548 U.S. at 69. Chambers, however, overlooks the preceding paragraph, where the Court tied the standard to that of a "*reasonable* employee," because the antiretaliation provision's "standard for judging harm must be objective." *Id.* at 68. Because Chambers has offered no evidence that reasonable employees in this context would find the denial of lateral transfer requests to be materially adverse, we agree with the district court that Chambers failed to raise a genuine issue of material fact as to whether the District's denial of her transfer request qualified as an adverse action under Title VII's antiretaliation provision.

**III.**

For the foregoing reasons, the district court's grant of summary judgment in favor of the District is affirmed.

*So ordered*.

TATEL, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*, concurring.

We write separately to join our colleagues who believe it "long past time for the *en banc* court to . . . make clear that transfers denied because of race, color, religion, sex, or national origin are barred under Title VII," and that "any action by an employer to deny an employment benefit on such grounds is an adverse employment action under Title VII." *Ortiz-Diaz* v. *U.S. Department of Housing & Urban Development*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Rogers, J., concurring) (citing Kavanaugh, J., concurring). This case, moreover, is an appropriate vehicle for the *en banc* court to correct our court's precedential interpretation of Title VII's antidiscrimination provision. Chambers urges us to overturn it; the issue is fully briefed; and the EEOC and United States Department of Justice (DOJ) filed an *amicus* brief "to inform the Court of its view that all discriminatory job transfers (and discriminatory denials of job transfers) are actionable" under that provision, attaching its brief in opposition to certiorari filed in *Forgus v. Esper*, 141 S. Ct. 234 (Mem.) (2020). DOJ *Chambers* Br. 4; DOJ Brief at 8, *Forgus v. Esper*, 141 S. Ct. 234 (Mem.) (2020) (No. 18-942) ("DOJ *Forgus* Br."); *see also* Appellant's Br. 12–15.

For its part, the District took no explicit position on the proper interpretation of Title VII's antidiscrimination provision in either its brief or at oral argument. Oral Arg. Rec. at 15:50–16:05. But in response to this court's order to advise us of its position, the District "agree[d] with the United States' textual interpretation of the antidiscrimination provision with respect to lateral transfers." Appellee's Resp. to the Court's November 20, 2020 Order at 1–2, *Chambers v. District of Columbia*, No. 19-7098 (Nov. 25, 2020) ("Appellee's Resp."). The District nonetheless argued "that this case should be affirmed on other grounds." *Id.*

2

We, however, see no value in allowing our court's incorrect interpretation of a straightforward statutory provision, first set forth in *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), to remain circuit precedent any longer. *Brown* held that a plaintiff bringing a Title VII discrimination claim based on a purely lateral transfer must establish "some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities" arising from the transfer, "such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown*, 199 F.3d at 457. Without analyzing Title VII's text, *Brown* relied on two sources: "the clear trend of authority" in out-of-circuit cases, and the fact that the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), "reinforced" the approach of not treating purely lateral transfers as adverse employment actions in the context of retaliation claims. *Brown*, 199 F.3d at 455–57 (internal quotation marks omitted). We believe that *Brown*'s interpretation is mistaken for multiple reasons.

First, the text of Title VII's antidiscrimination provision, section 703(a)(1), contains no requirement of "materially adverse consequences" for proving a discrimination claim—a fact that *Brown* overlooked. Section 703(a)(1) flatly makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because the key terms are undefined, we give "the term[s their] ordinary meaning." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012). And under its ordinary meaning, "the phrase 'terms, conditions, or privileges of employment' in Title VII is an expansive concept." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quoting 42 U.S.C. § 2000e-2(a)(1)). As DOJ's brief in *Forgus* points

3

out, "it is difficult to imagine a more fundamental 'term[]' or 'condition[]' of employment than the position itself." DOJ *Forgus* Br. 13 (quoting 42 U.S.C. § 2000e-2(a)(1)). Accordingly, "transferring an employee because of the employee's [sex] (or denying an employee's requested transfer because of the employee's [sex]) plainly constitutes discrimination with respect to 'compensation, terms, conditions, or privileges of employment' in violation of Title VII." *Ortiz-Diaz*, 867 F.3d at 81 (Kavanaugh, J., concurring) (quoting 42 U.S.C. § 2000e-2(a)(1)).

The absence of an express textual requirement of "materially adverse consequences" in section 703(a)(1) is all the more significant given the inclusion of such a requirement in the very next provision, section 703(a)(2). That provision makes it unlawful for an employer to "limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities *or otherwise adversely affect* his status." 42 U.S.C. § 2000e-2(a)(2) (emphasis added). "Where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).

This is not to say that Title VII's antidiscrimination provision is limitless or that its text can be read as a "general civility code" for the American workplace. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). To the contrary, section 703(a)(1) limits the kind of discrimination that is actionable to discrimination "with respect to . . . compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). In other words, section 703(a)(1) "protects an individual only from *employment-related* discrimination." *Burlington Northern &*

4

*Santa Fe Railway Co. v. White*, 548 U.S. 53, 61 (2006) (emphasis added). Section 703(a)(1) also requires that an employee establish that the employer "discriminate[d] *because of*" a protected characteristic. 42 U.S.C. § 2000e-2(a)(1) (emphasis added). In practice, this means that a Title VII plaintiff must do far more than merely allege different treatment based on a protected characteristic.

*Brown* cannot remain circuit law for a second reason: given the Supreme Court's decision in *White*, 548 U.S. 53, which limited the scope of the Court's holding in *Ellerth*, 524 U.S 742, *Brown*'s interpretation of Title VII's antidiscrimination provision now conflicts with Supreme Court precedent. In *Ellerth*, the Court dealt with the standard that applies to vicarious liability for hostile work environment claims under Title VII. Relying on agency law, the Court held that such liability is appropriate only "when the supervisor's harassment culminates in a *tangible employment action*." *Id.* at 765 (emphasis added). The question in *Brown*—whether purely lateral transfers are actionable under section 703(a)(1)—is therefore distinct from the question in *Ellerth*. *Brown*, however, explained that the reasoning in *Ellerth* still broadly "reinforced" the idea that some tangible harm was required for a transfer or transfer denial to be actionable under Title VII. *Brown*, 199 F.3d at 456. At the time, this interpretation of *Ellerth* was not unreasonable given that the Supreme Court has held that hostile work environment claims can be cognizable under section 703(a)(1), the provision at issue in *Brown*. *See Meritor Savings Bank*, 477 U.S. at 66.

But the Supreme Court's decision in *White*, seven years after *Brown*, has overtaken our court's reasoning in that case. In *White*, the Supreme Court clarified that "*Ellerth* did not discuss the scope of [Title VII's] general antidiscrimination provision." *Id.* at 65. The Court also made clear that the

5

purpose of *Ellerth*'s "tangible employment action" requirement was "only to 'identify a class of [hostile work environment] cases' in which an employer should be held vicariously liable (without an affirmative defense) for the acts of supervisors." *Id.* at 64 (alteration in original) (quoting *Ellerth*, 524 U.S. at 760). Given *White*, *Brown*'s reading of *Ellerth* is no longer tenable.

The District reads *White* differently. In its post-oral argument filing, it argues that "the Supreme Court—rather than this Court" may be the "proper forum" to address the question of how *White* affects Title VII's antidiscrimination provision. Appellee's Resp. at 5. This is so, the District argues, because a "plain-text reading of Title VII's antidiscrimination provision is in some tension with" *White*. *Id.* at 4. We disagree. It is true, as the District argues, that in *White*, the Court held that adverse actions "in the retaliation context . . . are limited to those that result in harm that is 'objective' and 'material.'" *Id.* (quoting *White*, 548 U.S. at 68). But the Court also expressly held that "Congress intended the differences" in language between the antidiscrimination and antiretaliation provisions "to make a legal difference." *White*, 548 U.S. at 62–63.

The District also argues that courts have interpreted the antiretaliation provision to be "*less* burdensome for plaintiffs to satisfy than the antidiscrimination provision." Appellee's Resp. at 4–5. Because, the District continues, *White* imposed a "materially adverse" and "objective" standard on the antiretaliation provision, "it is reasonable to assume Congress intended a similar de minimus exception for its antidiscrimination provision." *Id.* Here, too, the District misreads *White*, which made the antiretaliation provision less burdensome for plaintiffs in one sense: it held that "the antiretaliation provision, unlike the [antidiscrimination] provision, is not limited to discriminatory actions that affect the

6

terms and conditions of employment." 548 U.S. at 64. But it made the antiretaliation provision *more* burdensome in another sense: by imposing a "materially adverse" and "objective" harm requirement on the antiretaliation provision without doing so for the antidiscrimination provision. *Id.* at 68.

Both distinctions are in line with the objectives of the respective provisions, as discussed in *White*. "[T]he antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms . . . And normally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*. (internal quotation marks omitted). Accordingly, "petty slights and minor annoyances" fall outside of Title VII's protection against retaliatory behavior. In contrast, the antidiscrimination provision "seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religion, or gender-based status" and "to prevent injury to individuals based on who they are." *Id.* at 63 (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 800–01 (1973)). Permitting employers to discriminate when granting or denying purely lateral transfers would lead to consequences that are plainly inconsistent with that objective. For example, a supervisor who tells her employee that she is denying a lateral transfer request solely because of the employee's race would, under current circuit law, escape Title VII liability so long as the employee is unable to show additional "objectively tangible harm" arising out of the transfer denial.

Since *Brown*, our court has consistently held that purely lateral transfers and denials of purely lateral transfers, without more, are not actionable under Title VII's antidiscrimination provision. *See Ortiz-Diaz*, 867 F.3d at 74; *Czekalski v. Peters*, 475 F.3d 360, 364–65 (D.C. Cir. 2007); *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003). Every other circuit to have

7

considered the issue has taken the same approach. *See, e.g.*, *Forgus v. Mattis*, 753 F. App'x 150, 153 (4th Cir. 2018); *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007); *Reese v. State of Michigan Family Independent Agency*, 31 F. App'x 172, 174 (6th Cir. 2002).

In our view, however, statutory text, Supreme Court precedent, and Title VII's objectives make clear that employers should never be permitted to transfer an employee or deny an employee's transfer request merely because of that employee's race, color, religion, sex, or national origin. Yet under *Brown*, an employer may do just that so long as the employee suffers no "tangible harm" associated with that transfer or transfer denial. We suggest that the full court hear this case *en banc* to correct this clear legal error.